UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NELDA HARDIE, ) | CASE NO. 5:09CV1627 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | Magistrate Judge George J. Limbert |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **REPORT AND RECOMMENDATION OF** |
| Commissioner of Social Security, ) | **MAGISTRATE JUDGE** |
| ) | |
| Defendant. ) | |
| ) | |

Nelda Hardie ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the Commissioner's decision:

## I.   PROCEDURAL HISTORY

On September 29, 2005, Plaintiff filed applications for DIB and SSI alleging disability beginning September 25, 2005 due to heart valve problems, a brain aneurysm and venous angioma. Tr. at 76-80, 83, 380-382. The SSA denied Plaintiff's claims initially and on reconsideration. *Id*. at 58-66, 383-390. Plaintiff filed a request for hearing before an ALJ and on October 24, 2008, an ALJ conducted a hearing where he received some testimony from Plaintiff, and testimony from Hershel Goren, M.D., a medical expert ("ME"). Tr. at 55, 450-473. Plaintiff was represented by counsel. *Id*. The ALJ thereafter scheduled another hearing due to Plaintiff having laryngitis and the additional hearing was held on December 5, 2008, with Plaintiff, her counsel, and Bruce Holderead, a vocational expert ("VE"), present at the hearing. *Id*. at 414. Plaintiff and the VE testified.

On December 30, 2008, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. Tr. at 15-22. Plaintiff requested review of the ALJ's decision by the Appeals Council, but on June 20, 2009, the Appeals Council denied her request for review. *Id*. at 6. On July 15, 2009,

Plaintiff filed the instant suit. ECF Dkt. #1. On May 14, 2010, Plaintiff filed a brief on the merits. ECF Dkt. #17. On August 11, 2010, Defendant filed a brief on the merits. ECF Dkt. # 21.

**II.**     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ found that Plaintiff suffered from the severe impairments of sleep apnea, status post breast cancer, and obesity. Tr. at 17. The ALJ found that Plaintiff did not have a medically determinable brain aneurysm or headache impairment and found that Plaintiff's mitral valve prolapse and hearing loss were not severe impairments. *Id.* The ALJ went on to find that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id.* at 18.

The ALJ gave less than controlling weight to the opinion of Dr. Perry, Plaintiff's treating physician, who had opined that due to a history of a brain aneurysm, Plaintiff could: lift and carry no weight frequently and less than ten pounds occasionally, sit, stand/walk for less than two hours per workday and she had to alternate sitting, standing or walking every five minutes to relieve discomfort. *Id.* Dr. Perry opined that Plaintiff had to walk around every five to ten minutes for four to ten minutes each time. *Id.* at 359. He concluded that Plaintiff needed to shift at will from sitting to standing/walking and could never twist, stoop, crouch or climb ladders, and only occasionally climb stairs. *Id.* He also found that Plaintiff's abilities to reach, push and pull were limited in that she could perform none of those functions. *Id.* at 359-360. Dr. Perry further indicated that Plaintiff had to avoid concentrated exposure to temperature extremes, high humidity, fumes, odors, dusts and gases, perfumes, solvents and cleaners. *Id.* at 360. He also found that Plaintiff would be absent from work about once a month due to her impairments and treatment. *Id.*

The ALJ found that Dr. Perry's conclusions were not supported by the evidence of record and the record did not document a medically determinable brain aneurysm, which Dr. Perry specifically listed as the basis for his opinion. Tr. at 20. The ALJ relied upon the testimony of Dr. Goren, the medical expert, who had reviewed the medical evidence and testified that Plaintiff did not have a brain aneurysm. *Id.*

The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") to lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently and sit, stand/walk for six

hours in an eight-hour workday. Tr. at 18. The ALJ further determined that Plaintiff could occasionally climb ramps and stairs, but could not climb ladders, ropes, or scaffolds or be around hazards such as moving machinery or heights. *Id.* Based on the above RFC, the ALJ determined that Plaintiff was able to perform her past relevant work as a manager and material coordinator and therefore was not disabled. Tr. at 21.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.    ANALYSIS

### A.    TREATING PHYSICIAN

Plaintiff first asserts that the ALJ erred in rejecting the RFC opinion of her treating physician, Dr. Perry, and failed to explain his conclusion that Dr. Perry's opinion was not supported by the evidence of record. ECF Dkt. #17 at 9. Dr. Perry began treating Plaintiff in February 1998. Tr. at 358. He completed a physical RFC questionnaire, concluding that Plaintiff could: lift and carry less than ten pounds occasionally and no weight frequently; perform no reaching, pushing or pulling; sit, stand/walk for less than two hours per workday; alternate sitting, standing or walking every five minutes; walk around every five to ten minutes for four to ten minutes each time; shift position at will from sitting to standing/walking; never twist, stoop, crouch or climb ladders; only occasionally climb stairs; avoid concentrated exposure to temperature extremes, high humidity, fumes, odors, dusts and gases, perfumes, solvents and cleaners; and Plaintiff would be absent from work about once a month due to her impairments and treatment. Tr. at 358-360. When asked to explain the medical findings and support for the limitations that he outlined, Dr. Perry wrote "hx brain aneurysm." *Id.* at 359, 360.

Plaintiff contends that the ALJ failed to offer support for his conclusion that Dr. Perry's opinions were not supported by the evidence of record. ECF Dkt. #17 at 9. Plaintiff cites to her

-4-

consistent complaints to doctors of dizziness, poor balance, fatigue, headaches, double vision, memory loss, difficulty walking and loss of consciousness. *Id*. She notes the numerous tests that doctors have performed in order to find the cause of her symptoms and concludes that "Dr. Perry's opinion finds support from the consensus of concern among the array of examining doctors whom have taken her symptoms very seriously for so long." *Id*.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. An ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2). If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2)(i),(d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record. 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2).

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544, quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If

an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

The undersigned recommends that the Court find that substantial evidence supports the ALJ's rejection of Dr. Perry's opinions as to Plaintiff's RFC. Despite Plaintiff's assertion to the contrary, the ALJ did explain his finding that Dr. Perry's opinions were not supported by the evidence of record. The ALJ indicated that he reviewed opinion evidence in accordance with 20 C.F.R. §§ 404.1527 and 416.927, as well as SSR 96-2p, SSR 96-5p, and SSR 96-6p. Tr. at 18. He found that Dr. Perry's conclusions on the medical source statement were unsupported because they were based upon Plaintiff's history of a brain aneurysm, which was not supported by the evidence of record. *Id.* at 20. A treating physician's opinion must be supported by objective medical facts in order to be afforded significant weight. *Carter v. Comm'r of Soc. Sec.*, 36 Fed. App'x 190, 191, citing *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). Here, Dr. Perry provided no objective medical facts to support his opinion. The ALJ could therefore properly disregard Dr. Perry's opinion. *Id.* An ALJ may properly disregard an opinion of a treating physician opinion when the opinion is not supported by clinical findings or medical evidence. *Carte*r, 36 Fed. App'x at 191, citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir.1994). "A treating doctor's disability determination must be fully supported by direct reference to detailed, clinical, diagnostic evidence in the medical reports." *Carter*, 36 Fed. App'x at *2, citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir.1997). Dr. Perry did not provide support for his opinion and the ALJ relied upon the opinion of Dr. Goren, the medical expert, who testified that he had reviewed the medical evidence of record and supported his conclusion that Plaintiff did not have a brain aneurysm. An ALJ may accept a non-examining physician's opinion over that of an examining doctor when the non-examining physician clearly states the reasons for his differing opinion. *Carter*, 36 Fed. App'x at 191, citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994).

Moreover, while Plaintiff asserts that her symptoms were taken seriously by all of the

doctors, including Dr. Perry, there is no evidence that Dr. Perry relied upon these symptoms in determining Plaintiff's RFC since he listed only Plaintiff's history of a brain aneurysm as the support for his opinion. Further, when Plaintiff's counsel asked Dr. Goren at the hearing if Plaintiff's symptoms were indicative a brain aneurysm, he responded that they were not. Tr. at 467. Dr. Goren explained that if a person does indeed have an aneurysm, whether operable or inoperable, there are usually no restrictions because aneurysms are asymptomatic until they bleed. *Id*.

The undersigned notes that the ALJ did not explicitly state the weight that he gave to Dr. Perry's opinion. However, the undersigned recommends that the Court find that this error is harmless. The Sixth Circuit has held that the good reason requirement "does not require conformity at all times" and such a failure amounts to harmless error

> if the ALJ has met the goals of the procedural requirement-to ensure adequacy of review and to permit the claimant to understand the disposition of his case-even though he failed to comply with the regulation's terms. *Id. [Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)]. An ALJ may accomplish the goals of this procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.

*Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071, 2010 WL 3199693, at *4 (6th Cir. Aug. 12, 2010), unpublished, citing *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 470-472 (6th Cir. 2006) and *Hall v. Comm'r of Soc. Sec.*, 148 Fed. App'x 456, 464-465 (6th Cir. 2005).

In this case, the ALJ complied with the goals of the procedural requirement of the treating physician rule and substantial evidence supports the ALJ's treatment of Dr. Perry's opinion and notes. The ALJ reviewed Dr. Perry's October 27, 2008 RFC opinion and noted that Dr. Perry relied upon a history of brain aneurysm as the sole basis for his RFC. Dr. Perry did cite to "hx of brain aneurysm" as his only support for his 2008 RFC. Tr. at 359-360. It is true that a February 19, 1998 MRI and MRA of Plaintiff's brain indicated a "suspect tiny aneurysm just distal to the bifurcation of the right middle cerebral artery." *Id.* at 171. However, as pointed out by Dr. Goren, a June 24, 1998 brain MRI and intracranial MRA showed no aneurysm in the region of the right middle cerebral artery bifurcation. Further, a comparison of the June 24, 1998 MRI with the February 19, 1998 MRI lead the radiologist to conclude that the February 19, 1998 abnormality was a vascular loop or branch. *Id.* at 166. A February 6, 2006 MRI also showed no acute brain abnormality and a

March 23, 2007 MRI comparison with a February 3, 2007 MRI concluded that Plaintiff likely had a venous angioma of the right parietal region and stable, uncharged paraventricular and subcortical white matter lesions consistent with small vessel ischemic disease. *Id*. at 282, 291. An April 30, 2008 non-contrast CT scan also showed no brain aneurysm. *Id*. at 339. And a November 26, 2008 MRI showed no aneurysm or vascular malformation and no severe stenosis of the vessels in the region of the circle of Willis. *Id.* at 411. The Commissioner is not bound by a treating physician's opinion where substantial evidence exists to the contrary. *Hardaway v. Sec'y*, 823 F.2d 922, 927 (6th Cir. 1987).

The ALJ cited to the various MRIs and CT scans in concluding that medical evidence was lacking to substantiate that Plaintiff had a brain aneurysm and to reject Dr. Perry's opinion which relied solely on the history of that diagnosis without any supporting evidence. Tr. at 19-20. The ALJ also relied upon the testimony of Dr. Goren, a medical expert board certified in neurology, who testified that based upon his review of the medical records, Plaintiff did not have a brain aneurysm. *Id*. at 463-464. Dr. Goren indicated that there was concern about a possible aneurysm based upon the February 19, 1998 MRI, but the June 24, 1998 MRI concluded that it was not a brain aneurysm but a venous angioma. *Id*. at 459.

While the ALJ should have articulated the weight, or lack thereof, that he gave to Dr. Perry's opinion, he followed the goals of the procedural requirement because he explained the reasons for not giving controlling weight to the opinion and thereafter relied upon the opinion of Dr. Goren.

### B. **MEDICAL EXPERT TESTIMONY**

Plaintiff also asserts that the ALJ erred in relying so substantially upon the testimony of Dr. Goren when "unsettled opinions in the record regarding whether Plaintiff indeed has an aneurysm and to what degree she ought to be limited as a result." ECF Dkt. #17 at 9. The undersigned recommends that the Court find no merit to Plaintiff's assertion.

Once the ALJ decided to give less than controlling weight to treating physician Dr. Perry's October 2008 opinion and set forth adequate and supported reasons for doing so, the ALJ could rely upon other opinions of non-examining physicians in the record, including those of Dr. Goren, the medical expert. *Carter*, 36 Fed. App'x at 191. The ALJ relied upon Dr. Goren's review of

-8-

Plaintiff's medical records and his opinion that Plaintiff did not have a brain aneurysm. Social Security Ruling 96-9p states that "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3. It should also be noted that Dr. Goren testified that he is board certified in the field of medicine relevant in this case, neurology. 20 C.F.R. § 404.1527(d)(5)("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The testimony of a medical expert can constitute substantial evidence to support the ALJ's decision when the expert's opinion is detailed and consistent with other medical evidence in the record. *Davis v. Chater*, No. 95-2335, 1996 WL 732298, at *2 (6th Cir. Dec. 19, 1996) and *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989).

Plaintiff also complains that the ALJ erred in relying upon the testimony of Dr. Goren when he was the only doctor to find that she had no limitations and Drs. Vasiloff and Cole, state reviewing physicians, concluded that Plaintiff had an aneurysm and arterivenous malformation and found her limited based upon these impairments. ECF Dkt. #17 at 9-10. The undersigned notes that the ALJ did find that Plaintiff had limitations based upon her impairments. He found that Plaintiff was limited to medium work, that is, lifting and/or carrying up to fifty pounds occasionally and twenty-five pounds frequently, and sitting, standing/walking for a total of six hours per eight-hour workday. Tr. at 18. He further found that Plaintiff could only occasionally climb ramps and stairs and could not climb ladders, ropes or scaffolds, and could not be around hazards such as dangerous machinery or heights. *Id.* Dr. Goren also found that Plaintiff had limitations in her ability to climb ladders, ropes or scaffolds, indicating that she could not do so and she could not be around moving machinery or unprotected heights. *Id.* at 460. And contrary to Plaintiff's assertion, Dr. Sahgal, an agency examining physician, found that Plaintiff's impairments presented no limitations in her physical work-related abilities, except for a hearing impairment. *Id.* at 236. Otherwise, Dr. Sahgal found Plaintiff able to lift and carry without restriction, and to walk, grasp and handle objects, climb, balance, stoop, crouch, kneel, talk, see and crawl. *Id.* Thus, Drs. Goren and Sahgal both opined that

-9-

Plaintiff had no lifting and carrying, sitting, standing or walking limitations.

However, the ALJ did not adopt the lifting and carrying, sitting, standing or walking limitations opined by Drs. Sahgal and Goren. Rather, the ALJ limited Plaintiff to a medium work RFC, with the environmental and climbing limitations opined by Dr. Goren. The ALJ's RFC was supported by Dr. Vasiloff, who had concluded that Plaintiff was limited to medium work. Tr. at 317. Dr. Vasiloff completed a RFC assessment on August 29, 2006 indicating Plaintiff's primary diagnosis as left parietal arterivenous malformation and her secondary diagnosis as a history of breast cancer. Tr. at 316. Dr. Vasiloff opined that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, sit, stand/walk for up to six hours per eight-hour workday, perform unlimited pushing and pulling and only occasionally climb ramps, ladders and stairs and never balance. *Id.* He cited the diagnoses of arterivenous malformation in the left parietal lobe and a "tiny aneurysm in the Circle of Willis" and indicated that heavy lifting was contraindicated for someone with an arterivenous malformation in the left parietal lobe. *Id.* at 317. While he did note a "tiny aneurysm in the Circle of Willis" in his findings, he did not attribute his restriction against heavy lifting to this finding, but rather explained that it was the arterivenous malformation that contraindicated heavy lifting. *Id.* at 317, 322.

The Court should find that substantial evidence supports the ALJ's RFC determination. Once he gave less than controlling weight to the opinion of Plaintiff's treating physician, the ALJ properly reviewed the other opinions of record, including those of Dr. Goren, Dr. Sahgal, an agency examining physician, and Drs. Vasiloff and Cole, agency reviewing physicians. The ALJ weighed the various opinions and determined a RFC that was supported by a combination of the opinions of Drs. Vasiloff, Goren and Sahgal, the objective medical evidence, and the evidence of record. *Id.* at 18-21. And even if Plaintiff had a brain aneurysm, contrary to numerous tests after the February 1998 MRI and contrary to Dr. Goren's opinion, the agency physicians considered the aneurysm and nevertheless found that Plaintiff was still capable of work. The only real difference among the agency physicians' opinions was the exertional level with regard to heavy, medium or light work. *Id.* at 236, 317, 322, 328, 460. Faced with these conflicting RFCs, the ALJ could evaluate and choose the level he believed was supported by both the medical and non-medical evidence. The

ultimate responsibility for determining a claimant's RFC rests with the ALJ and an ALJ "does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron*, 2010 WL 3199693, at *3.

For these reasons, the Court should find no merit to Plaintiff's assertion.

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court affirm the ALJ's decision denying SSI and DIB to Plaintiff.

DATE: October 28, 2010   */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation.  L.R. 72.3(b).